## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHER DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Tracey A. Necak<br>97 Weathervane Lane<br>Brunswick, OH 44212 | CASE NUMBER: 1:17-cv-1473<br><br>JUDGE: |
| Plaintiff, | |
| v. | **JURY DEMAND ENDORSED HEREIN** |
| SELECT PORTFOLIO SERVICING, INC.<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215 | |
| Defendant. | |

## COMPLAINT FOR MONEY DAMAGES

The following allegations are based upon Plaintiff Tracey A. Necak's personal knowledge, information and belief, and the reasonable investigation of counsel.  Ms. Necak, through counsel, alleges as follows:

## I. PRELIMINARY STATEMENT

1.     On March 31, 2006, Tracey A. Strzala n/k/a Tracey A. Necak ("Mrs. Necak") executed a promissory note (the "Note") to finance the purchase her residence located at 97 Weathervane Lane, Brunswick, OH (the "Home") secured by a mortgage recorded in the Medina County, Ohio Recorder's Office at Instrument No. 20060R009621 (the "Mortgage" collectively with the Note, the "Mortgage Loan").  A true and accurate copy of the Note and Mortgage are attached as Exhibits A and B respectively.

2.      In 2016 Mrs. Necak fell on hard financial times, applied for loss mitigation from Select Portfolio Servicing, Inc. ("SPS"), and was approved to enter into a Temporary Payment Plan ("TPP") under the Home Affordable Modification Program ("HAMP").

3.      Mrs. Necak complied with all conditions of the TPP and was sent a loan modification on or about May 14, 2016, but was unable to get her signature notarized because SPS had erroneously drafted the loan modification using her maiden name.

4.      Mrs. Necak promptly notified SPS, but SPS refused to update her name on the loan modification and made duplicative and unnecessary requests for proof of Mrs. Necak's name change to run out the time by which Mrs. Necak had to return the loan modification.

5.      On July 1, 2016, one day after the deadline for Mrs. Necak to accept the loan modification, SPS told Mrs. Necak that the marriage certificate did not meet its "verification requirements" for a name change, and requested that Mrs. Necak send a copy of her marriage license.

6.      At all times SPS communicated to Mrs. Necak that she had plenty of time to prove her name change accept the loan modification, but chose to treat Mrs. Necak's loan modification as not accepted and closed out her request for HAMP.

7.      SPS promptly raised Mrs. Necak's monthly payment back to its original amount and demanded payment of the difference between the reduced TPP payments and the regular monthly payment for all the months she paid the reduced amount.

8.      Mrs. Necak continued to make payments on her Mortgage Loan at all times while trying to accept the Loan Modification.

9.      On or about February 10, 2017, Mrs. Necak received a Summons and Complaint for Foreclosure in Medina County Court of Common Pleas Case No. 17CIV0133.

10.     Even though Mrs. Necak had submitted proof of her name change and was continuing to work with SPS to get an updated loan modification that reflected her current name, SPS closed Mrs. Necak's request for HAMP.

11.     SPS refused to offer Mrs. Necak an accurate loan modification.

12.     The actions of SPS in offering Mrs. Necak a loan modification and servicing her name change request constitute fraud.

13.     Mrs. Necak institutes this action against SPS for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 1601, *et seq*., and Regulation X, 12 C.F.R. 1024.

14.     Mrs. Necak institutes this action against SPS for breach of contract or in the alternative, promissory estoppel, and fraud.

## II. JURISDICTION & VENUE

15.     This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

16.     This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. 1367 because the claims involve the same case or controversy.

17.     This Court has personal jurisdiction over SPS because SPS transacts business within this District, the Mortgage Loan was incurred within this District, and the

property which was the subject of the Mortgage Loan is located within this District. *International Shoe v. Necak*, 326 U.S. 310 (1945).

18.    Venue is proper in accordance with 28 U.S.C. 1391(b)(3), as SPS is subject to personal jurisdiction in this District.

## III. PARTIES

19.    Mrs. Necak is a natural person currently residing within this Court's jurisdiction at 97 Weathervane Lane, Brunswick, OH 44212.

20.    At all times relevant to this transaction, Mrs. Necak was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. 2602(5).

21.    Mrs. Necak used the Mortgage Loan to fund her purchase of the Home which she has at all relevant times used as her primary residence.

22.    At all times relevant to this transaction, Mrs. Necak was and is a **"Borrower"** of a federally related mortgage loan within the meaning of RESPA.

23.    SPS is a business organized in the State of Utah.

24.    At all times relevant to this action SPS is and was a corporation.

25.    At all times relevant to this action, SPS was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. 2602(5).

26.    The Mortgage Loan was and is a **"Federally Related Mortgage Loan"** within the meaning of RESPA, 12 U.S.C. 2602(1).

27.    At all times relevant to this transaction, SPS engaged and engages in **"Servicing"** Mrs. Necak's residential Mortgage Loan within the meaning of RESPA, 12 U.S.C. 2605(i)(3).

28. At all times relevant to this transaction, Green Tree was and is a **"Servicer"** within the meaning of RESPA, 12 U.S.C. 2605(i)(2).

29. At all times relevant to this transaction, SPS engaged and engages in **"Servicing"** Mrs. Necak's residential Mortgage Loan within the meaning of RESPA, 1605(i)(3).

30. At all times relevant to this transaction, SPS was and is a **"Servicer"** within the meaning of RESPA, 12 U.S.C. 2605(i)(2).

## IV. FACTUAL ALLEGATIONS

31. Mrs. Necak incorporates all paragraphs by reference as though fully written here.

32. Tracey A. Strzala n/k/a Tracey A. Necak entered into the Mortgage Loan to finance the purchase of her Home in 2006.

33. Mrs. Necak began to experience financial hardships in 2015.

34. Mrs. Necak submitted a loss mitigation application to SPS in order to modify her Mortgage Loan, so she could continue to make monthly mortgage loan payments.

35. On or about February 10, 2016, SPS approved Mrs. Necak to participate in its HAMP TPP.

36. Under the TPP, Mrs. Necak was required to make 3 payments of $1,155.78 beginning on March 1, 2016 and ending on May 1, 2016.

37. Under the TPP, Mrs. Necak's Mortgage Loan would be permanently modified, after making all 3 payments and submitting all required documents.

38. Mrs. Necak made all 3 payments under the TPP.

39. On or about May 9, 2016, SPS approved Mrs. Necak for permanent modification of her Mortgage Loan.

5

40. On May 14, 2016, SPS sent an approved HAMP modification agreement to Mrs. Necak and requested that it be signed, notarized, and returned to SPS ("Loan Modification").

41. A copy of the Loan Modification is not attached because it is already in SPS's possession.

42. The Loan Modification drafted by SPS and offered to Mrs. Necak erroneously used her maiden name, Tracey A. Strzala.

43. Prior to offering the Loan Modification, SPS never requested that Mrs. Necak provide documentation to prove her name change from Tracey A. Strzala to Tracey A. Necak.

44. Mrs. Necak was denied at two different banks prior to May 28, 2016, when she attempted to get her signature notarized on the Loan Modification.

45. On May 27, 2016, Mrs. Necak asked SPS if a notary was necessary to accept the Loan Modification.

46. On May 27, 2016, SPS told Mrs. Necak that a notarized signature was required to accept the Loan Modification and instructed Mrs. Necak to tell a notary to notarize her signature and ignore the name appearing on the Loan Modification.

47. On May 27, 2016, Mrs. Necak communicated to SPS that the notaries she had review the Loan Modification refused to notarize her signature due to the use of her maiden name on the Loan Modification and the illegality of notarizing a document without properly verifying the identity of the signer.

48. On May 27, 2016, Mrs. Necak communicated to SPS her concern that if she did not receive an updated Loan Modification with her correct name in time, she

feared she would be unable to accept the Loan Modification prior to the June 30, 2017 deadline.

49.   On May 27, 2016, SPS refused to send an updated the Loan Modification until Mrs. Necak sent SPS a copy of her marriage certificate.

50.   Mrs. Necak provided a copy of her marriage certificate to SPS on or about May 27, 2016.

51.   SPS sent a notice to Mrs. Necak dated May 31, 2016, stating that it was in receipt of Mrs. Necak's request for a name change but was unable to fulfill her request until one of the following documents was provided: marriage certificate, court approved document showing name change, or divorce certificate.

52.   On June 1, 2016, SPS communicated to Mrs. Necak that SPS received the copy of her marriage certificate but would need to follow-up with her to discuss the marriage certificate and whether an updated Loan Modification with her correct legal name could be sent.

53.   On June 6, 2016, SPS communicated with Mrs. Necak that no additional documents or further clarification was necessary to complete the review of her name change issue and that there was still enough time for Mrs. Necak to accept the Loan Modification.

54.   SPS sent Mrs. Necak a letter dated June 8, 2016, which stated that the executed Loan Modification had not been received and failure to sign and return it by June 30, 2016, will result in SPS closing out Mrs. Necak's HAMP request due to non-acceptance of the Loan Modification.

55.  On June 13, 2016, Mrs. Necak communicated with SPS to verify that SPS had received her marriage certificate and asked when she could expect to receive an updated modification that reflected her married name.

56.  On June 13, 2016, SPS informed Mrs. Necak that it had received her email with a link to her marriage certificate, but SPS was unable to open it.

57.   On or about June 13, 2016, Mrs. Necak sent the marriage certificate via email again.

58.  On June 13, 2016, SPS indicated to Mrs. Necak that there was still time to accept the Loan Modification, but never informed her of the June 30, 2016 deadline.

59.  SPS failed to send Mrs. Necak an updated Loan Modification with her correct legal name making it impossible for Mrs. Necak to comply with the June 30, 2016 deadline.

60.  On June 30, 2016, SPS determined that Mrs. Necak's failure to sign, notarize and return the Loan Modification constituted non-acceptance of the Loan Modification and closed her HAMP request.

61.  SPS did not immediately communicate to Mrs. Necak its determination that the Loan Modification had not been accepted and her HAMP request had been closed.

62.  On or about July 1, 2016, SPS informed Mrs. Necak that the marriage certificate was not sufficient and that it needed a valid marriage license to resolve her name change issue but there was still time for her to accept the Loan Modification.

63.  Mrs. Necak communicated to SPS that she would obtain a copy of her marriage license.

64.     SPS did not inform Mrs. Necak that the time to accept the Loan Modification had

expired on July 1, 2016.

65.     On July 5, 2016, SPS communicated to Mrs. Necak that it needed a valid

marriage license from the court to resolve the name change issue as soon as

possible.

66.     On July 5, 2016, Mrs. Necak agreed to continue efforts to obtain and submit her

marriage license.

67.     On July 5, 2016, SPS did not inform Mrs. Necak that her time to accept the Loan

Modification had expired.

68.     On July 20, 2016, four different representatives of SPS called Mrs. Necak.

69.      During those phone calls, Mrs. Necak requested assistance accessing her online

account, and SPS informed Mrs. Necak that the Loan Modification expired and

recommended that she restart the HAMP process by resubmitting all required

information for her application.

70.     Mrs. Necak did not understand why she was being required to start the HAMP

process over again and suffered severe anxiety, helplessness, excessive stress,

lack of sleep and mental, emotional and physical exhaustion as a result of SPS's

actions.

71.     On August 5, 2016, SPS communicated to Mrs. Necak that it had not received the

signed and notarized Loan Modification and as a result had closed Mrs. Necak's

HAMP request and considered the Loan Modification not accepted.

72.     From February 2016 to July 2016, Mrs. Necak communicated with at least 13

different representatives of SPS who gave incomplete, inconsistent, false and

misleading information regarding SPS's evaluation of Mrs. Necak's name change request and the time available for her to accept the Loan Modification.

73.     At all relevant times, Mrs. Necak relied upon the information, recommendation and advice of SPS in an attempt to secure a permanent modification of her loan.

74.     Mrs. Necak quickly became unable to make full payments towards her Mortgage Loan.

75.     On February 9, 2017, U.S. Bank, N.A. ("USB") filed a complaint in foreclosure against Mrs. Necak in Medina County Court of Common Please Case No. 17CIV0133 ("Foreclosure").

76.     On May 12, 2017, without submitting any additional information, SPS sent notice that it had amended and corrected the borrower name on the Mortgage Loan to Tracey A. Necak.

77.     As a result of SPS's actions, Mrs. Necak was required to incur the legal fees and expenses of defending the Foreclosure.

78.     As a result of SPS's actions, Mrs. Necak was required to incur the legal fees and expenses of initiating the present lawsuit.

## V. COUNT ONE – RESPA

79.     Mrs. Necak incorporates all paragraphs by reference as though fully written here.

80.     SPS's actions described herein constitute violations of RESPA, 12 U.S.C. 1601, *et seq*., and Regulation X, 12 C.F.R. 1024.40 and 12 C.F.R. 1024.41.

81.     Mrs. Necak's loss mitigation application was treated as complete by SPS when it offered her the Loan Modification and requested no additional documents or information.

82. On May 9, 2016, Mrs. Necak's loss mitigation application was facially complete pursuant to Regulation X, 12 C.F.R. 1024.41(c)(2)(iv).

83. SPS failed to provide notice that Mrs. Necak's loss mitigation application was facially complete.

84. After allowing Mrs. Necak to complete the TPP and offering her the Loan Modification, SPS required additional documentation to prove her name change.

85. SPS did not take reasonable steps to make sure that Mrs. Necak received consistent and accurate information regarding evaluation of her request for HAMP assistance.

86. SPS made inconsistent and duplicative requests for Mrs. Necak to submit documentation to prove her name change.

87. SPS failed on numerous occasions to promptly inform Mrs. Necak of the additional requirement of a valid marriage license and on at least one occasion affirmatively represented that no additional documents or clarification was needed after receiving the marriage certificate.

88. By failing to maintain policies and procedures reasonably designed to provide Mrs. Necak with accurate information regarding the status of her loss mitigation application and the actions she needed to take to complete her loss mitigation application, SPS violated Regulation X, 12 C.F.R. 1024.40(b)(1).

89. By failing to provide Mrs. Necak with accurate information regarding the status of her loss mitigation application and the actions she needed to take to complete her loss mitigation application, SPS violated Regulation X, 12 C.F.R. 1024.40(b)(1).

90.     By failing to maintain policies and procedures reasonably designed to retrieve in a timely manner documents and information provided by Mrs. Necak in connection with her loss mitigation application, specifically the name change issue, SPS violated Regulation X, 12 C.F.R. 1024.40(b)(2).

91.     By failing to exercise reasonable diligence in obtaining documents and information to allegedly complete Mrs. Necak's loss mitigation application, specifically the name change issue, SPS violated Regulation X, 12 C.F.R. 1024.40(b)(2).

92.     By failing to promptly request all necessary information and documentation from Mrs. Necak and allow a reasonable opportunity for Mrs. Necak to meet the requests after her application was facially complete, SPS violated Regulation X, 12 C.F.R. 1024.41(c)(2)(iv).

93.     By failing to provide a reasonable period of time to fulfill all requirements after Mrs. Necak made all 3 TPP payments on time, SPS violated Regulation X, 12 C.F.R. 1024.41(e)(2)(ii)

94.     By stating that the Loan Modification was not accepted by Mrs. Necak, SPS failed to provide notice to Mrs. Necak stating the actual specific reasons as to why she was denied a permanent loan modification in violation of Regulation X, 12 C.F.R. 1024.41(d)(1).

95.     By failing to send Mrs. Necak written correspondence to notify her that both a marriage certificate and valid marriage license were required to process her name change request, SPS violated Regulation X, 12 C.F.R. 1024.41(b)(2)(i)(B).

96. SPS engaged in a pattern or practice of noncompliance with the requirements of RESPA.

97. As a result of SPS's actions, Mrs. Necak suffers severe emotional distress, including anxiety, stress, and sleepless nights.

98. As a result of SPS's actions, Mrs. Necak was prevented from obtaining a loan modification.

99. As a result of SPS's actions, Mrs. Necak was forced to incur the costs and attorneys' fees in defending the Foreclosure.

100. SPS is liable to Mrs. Necak under this Count for its RESPA violations in an amount equal to or greater than: statutory damages in excess of $2,000.00, actual damages for each of SPS violations of RESPA to be proven at trial, and the costs of this action and attorney's fees, 12 U.S.C. 2605(f).

## VI. COUNT TWO – BREACH OF CONTRACT

101. Mrs. Necak incorporates all paragraphs by reference as though fully written here.

102. SPS offered a TPP to Mrs. Necak which required her to make 3 timely payments.

103. The TPP states that once all payments are made and all requested documentation is received, the mortgage will be permanently modified.

104. Mrs. Necak accepted the offer and made all 3 payments timely as required by the TPP.

105. SPS did not immediately request any additional information or documentation from Mrs. Necak after she made the required 3 payments.

106. SPS did not request an additional information or documentation from Mrs. Necak prior to sending her the Loan Modification.

107. Mrs. Necak complied with all her obligations under the TPP.

108.  Mrs. Necak complied with all conditions precedent to the contract.

109.  Mrs. Necak substantially performed under the Loan Modification.

110.  The terms of the Loan Modification and TPP are clear and definite.

111.  At all relevant times while Mrs. Necak attempted to accept the Loan Modification, she continued making payments on her Mortgage Loan.

112.  The TPP represents a valid and enforceable contract to permanently modify Mrs. Necak's loan.

113.  SPS refused to permanently modify Mrs. Necak's loan which constitutes a breach of the contract even though she had part performed under the contract.

114.  As a direct and proximate result of SPS's breach, Mrs. Necak was forced to make higher unaffordable monthly payments than what would have been required under the Loan Modification which led to the filing of the Foreclosure.

115.  Mrs. Necak suffered damage resulting from SPS's breach including but not limited to the cost and attorneys' fees to bring this action, the cost and attorneys' fees to defend against the Foreclosure, and the loss of the benefit of lower monthly payments under the Loan Modification.

## VII. COUNT THREE – PROMISSORY ESTOPPEL (IN THE ALTERNATIVE)

116.  Mrs. Necak incorporates all paragraphs by reference as though fully written here.

117.  SPS made clear representations in the TPP and orally through its representatives to Mrs. Necak, that her loan would be permanently modified if she complied with the provisions of the TPP.

118.  Mrs. Necak complied with all provisions of the TPP.

119. SPS sent Mrs. Necak the Loan Modification offer that erroneously used Mrs. Necak's maiden name.

120. But for the use of her maiden name, Mrs. Necak would have been able to accept the Loan Modification.

121. Only after Mrs. Necak received the Loan Modification offer, did SPS request additional documents and information.

122. SPS made clear representations that Mrs. Necak's Loan Modification would be updated to reflect her current name, if she provided documentation proving her name change.

123. Mrs. Necak relied on SPS's representations by obtaining and submitting a marriage certificate to SPS.

124. Mrs. Necak relied on SPS's representations by waiting for SPS to evaluate the marriage certificate she submitted to SPS.

125. SPS waited until after Mrs. Necak's deadline to accept the Loan Modification expired, to inform her of the additional requirement of a valid marriage license to prove her name.

126. SPS's official position on Mrs. Necak's HAMP request and Loan Modification is that she did not accept the Loan Modification even though SPS made it impossible for Mrs. Necak to accept.

127. Mrs. Necak relied on SPS's representations to her detriment because she submitted the marriage certificate and patiently waited for SPS to resolve the name change issue effectively allowing SPS to run out the time for Mrs. Necak to accept the Loan Modification.

128. Equity and fairness demands that SPS be estopped from denying Mrs. Necak the loan modification she was promised.

129. Mrs. Necak suffered damage resulting from her detrimental reliance including but not limited to the cost and attorneys' fees to bring this action, the cost and attorneys' fees to defend against the Foreclosure, and the loss of the benefit of lower monthly payments under the Loan Modification.

## VIII. COUNT THREE – FRAUD

130. Mrs. Necak incorporates all paragraphs by reference as though fully written here.

131. SPS's actions described in the Factual Allegations constitute fraud.

132. SPS created a situation through its numerous false material representations, where it was impossible for Mrs. Necak to comply with SPS's requirements to accept the Loan Modification within the time constraints set by SPS.

133. SPS represented to Mrs. Necak that the Loan Modification must be signed, notarized and returned to SPS by June 30, 2016.

134. SPS communicated with Mrs. Necak many times while servicing the Mortgage Loan from February 2016 to July 2016.

135. SPS was able to verify the identity of Mrs. Necak without requiring submission of proof of name change during numerous communications between February 2016 to July 2016.

136. SPS created false and arbitrary requirements for Mrs. Necak to prove her name change.

137. SPS drafted the Loan Modification using Mrs. Necak's maiden name with the knowledge or utter disregard for its falsity.

138.    Using her maiden name in the Loan Modification made it impossible for Mrs. Necak to satisfy SPS's notary requirement to accept the Loan Modification.

139.    SPS refused to update the Loan Modification without proof of Mrs. Necak's name change.

140.    SPS required only Mrs. Necak's marriage certificate to prove her name change prior to July 1, 2016.

141.    SPS representatives on numerous occasions knowingly misrepresented that a marriage certificate was all that was required to prove Mrs. Necak's name change.

142.    On June 6, 2016, SPS represented to Mrs. Necak that no further documents were needed to prove her name change.

143.    SPS enforced an arbitrary deadline for Mrs. Necak to accept the Loan Modification by June 30, 2016 despite knowing that she could not accept the Loan Modification without SPS sending her an updated Loan Modification.

144.    On June 13, 2016, SPS communicated to Mrs. Necak that SPS was evaluating the marriage certificate and her name change issue.

145.    SPS spent an unreasonable amount of time to evaluate the marriage certificate submitted by Mrs. Necak.

146.    On June 30, 2016, SPS had yet to inform Mrs. Necak of its evaluation of the marriage certificate.

147.    On June 30, 2016, SPS closed Mrs. Necak's HAMP request and considered her to have not accepted the Loan Modification.

148.   SPS did not extend the June 30, 2016 deadline even though SPS knew or should have known that it was impossible for Mrs. Necak to comply with both deadline and the notary requirement to accept the Loan Modification.

149.   SPS intentionally or recklessly delayed the evaluation of the marriage certificate until after the June 30, 2016 deadline expired.

150.   On July 1, 2016, SPS unilaterally required additional documentation to prove Mrs. Necak's name change.

151.   On July 1, 2016, SPS stated that the marriage certificate was not sufficient and that Mrs. Necak would need to submit a valid marriage license to resolve the name change issue.

152.   On July 1, 2016, SPS did not mention the expiration of the June 30, 2016, deadline to Mrs. Necak and represented to Mrs. Necak that she had enough time to submit a marriage certificate.

153.   On July 5, 2016, SPS communicated with Mrs. Necak the additional requirement of a valid marriage license, but did not mention any time constraints including the expiration of the June 30, 2016 deadline.

154.   On July 5, 2016, SPS communicated to Mrs. Necak that she had time to submit the marriage certificate.

155.   SPS knowingly or with reckless disregard for the truth, did not disclose the need for a marriage license to Mrs. Necak prior to the expiration of the June 30, 2016 deadline.

156.   On July 20, 2016, SPS represented to Mrs. Necak that she had failed to timely accept the Loan Modification.

157. On August 8, 2016, SPS sent Mrs. Necak a letter explaining that SPS officially considers Mrs. Necak's HAMP request closed due to non-acceptance of the Loan Modification.

158. At all relevant times prior to July 1, 2016, SPS, knowingly or with reckless disregard for the truth, represented to Mrs. Necak that only the marriage certificate was required.

159. SPS, knowingly or with reckless disregard for the truth, represented to Mrs. Necak that she had submitted all necessary documents to prove her name change.

160. At all relevant times prior to July 20, 2016, SPS, knowingly or with reckless disregard for the truth, represented to Mrs. Necak that she had time submit the marriage certificate to prove her name change.

161. On May 12, 2017, without submitting any additional information, SPS amended and corrected the borrower name on the Mortgage Loan account to Tracey A. Necak.

162. SPS intentionally and knowingly created arbitrary, unreasonable and duplicative requirements of Mrs. Necak to prove her name change making it impossible for her to accept the Loan Modification when no proof was actually required.

163. SPS made false material representations when it knew that the statements were false.

164. SPS made false material representations when it should have known the statements were false.

165. SPS made false material representations with utter disregard as to the falsity of those statements.

166. The false representations made by SPS to Mrs. Necak were material to her ability to accept the Loan Modification.

167. At all relevant times, SPS intended for Mrs. Necak to rely and act on its false material representations.

168. Mrs. Necak relied on all of SPS's material representations.

169. Mrs. Necak had no choice but to rely on the representations made by SPS since it was impossible for her to comply with the notary requirement without an updated Loan Modification.

170. As a result of SPS's actions, Mrs. Necak suffered damages.

171. As a result of SPS's actions, Mrs. Necak did not receive a loan modification.

172. As a result of SPS's actions, Mrs. Necak endured sleepless nights, headaches, and anxiety.

173. As a result of SPS's actions, Mrs. Necak suffered severe mental anguish and emotional distress.

174. As a result of SPS's actions, Mrs. Necak was forced to incur attorney's fees and the expense of bringing this litigation.

175. As a result of SPS's actions, Mrs. Necak was forced to incur attorney's fees and the expense of defending the Foreclosure.

176. As a result of SPS's actions, Mrs. Necak is entitled to actual damages, economic damages, non-economic damages, punitive damages and her attorney's fees and costs of this action.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Mrs. Necak respectfully prays that this Court:

A. Assume jurisdiction of Mrs. Necak's claims;

B. Grant judgment in favor of Mrs. Necak on her claims;

C. Grant Mrs. Necak the maximum damages she seeks on her counts, including the maximum statutory damages available under each claim where statutory damages are available, and the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

D. Order SPS to permanently modify the Mortgage Loan pursuant to the terms of the Loan Modification.

E. Award Mrs. Necak the costs of this litigation, including filing fees and costs;

F. Award Mrs. Necak her attorney's fees;

G. Award such other relief as the court deems appropriate.


Dated this 13th day of July, 2017.          Respectfully Submitted,
                                             DOUCET & ASSOCIATES CO., LPA


                                             /s/ Sean M. Kohl_____
                                             Sean M. Kohl (0086726)
                                             *Attorney for Plaintiff Tracey A. Necak*
                                             700 Stonehenge Parkway, Suite 2B
                                             Dublin, OH  43017
                                             (614) 944-5219 PH
                                             (818) 638-5548 FAX
                                             Sean@Doucet.Law


## JURY TRIAL DEMANDED

Plaintiff Jonna Necak respectfully requests a jury trial on all triable issues.


                                             /s/ Sean M. Kohl_____
                                             Sean M. Kohl (0086726)